# LEROY C. BROWN ET AL. *v.* DAVID W. HORNBECK

[No. 1081, September Term, 1982.]

*Decided April 14, 1983.*

The cause was argued before Liss, Weant and Alpert, JJ.

*C. Christopher Brown,* with whom was *Maurice Braverman* on the brief, for appellants.

*Diana G. Motz, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Robert A. Zarnoch, Assistant Attorney General,* and *Jeanne A. Hitchcock, Assistant Attorney General,* on the brief, for appellee.

Liss, J., delivered the opinion of the Court.

In January 1980, appellants, seven teachers for the Maryland Department of Corrections who were assigned to prison teaching positions in Baltimore City, brought a class action suit in the Circuit Court of Baltimore City [1] on behalf of the Baltimore City prison teachers. The appellees herein are David W. Hornbeck, the State Superintendent of Schools and John C. Crew, Sr., Superintendent of Baltimore City Schools.[2]

Appellants alleged in their bill of complaint that while public school teachers in Baltimore City work ten months of the year, consisting of approximately 189 work days, prison teachers work twelve-month years, consisting of approximately 248 work days, and that therefore their 10%

---

1. At the time of the institution of this suit, the Circuit Court of Baltimore City was part of the Supreme Bench of Baltimore City. All of the courts of the Supreme Bench of Baltimore City have since been consolidated into the Circuit Court for Baltimore City.

2. John C. Crew, Sr. has since retired from his position.

pay adjustment for this longer work year was significantly disproportionate to its approximately 30% greater duration. They further contended that correctional system teachers assigned to prisons in other Maryland counties received 20% pay adjustments for their additional efforts, twice the adjustment received by appellants and their class.

In their two-count bill of complaint appellants initially alleged a violation of Maryland Code (1978) § 6-303 (a) of the Education Article, which guarantees that they "be paid an annual salary of not less than the salary received by a public school teacher of similar training and experience in the county where the institution is located." The second count alleged that the disparities in their pay scale denied them equal protection of the laws. Appellants sought declaratory and injunctive relief, as well as court awarded attorneys' fees.

After discovery and settlement discussions, the appellants resolved their dispute with the appellees by agreeing to accept an increase in adjustment from 10% to 15%. At that point the sole issue to be resolved was the question of attorneys' fees.

The parties submitted that issue to the presiding chancellor on the basis of legal memoranda, affidavits, stipulation and oral argument, and the trial judge ruled that appellants were not entitled to attorneys' fees. It is from that judgment that this appeal was filed.

Two issues are raised for determination by this appeal:

    1. Did appellants waive their right to an award of attorneys' fees by a pleading omission?
    2. Did "special circumstances" exist to justify denial of an award of attorneys' fees?

## 1.

Appellants initially argue that having prevailed on the merits of their lawsuit in a constitutionally based action rooted in 42 U.S.C. § 1983 (1976), they were entitled to an award of counsel fees pursuant to the provisions of the companion statute, 42 U.S.C § 1988 (1976).

42 U.S.C. § 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1988 provides in pertinent part as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. [emphasis supplied].

Appellants submitted affidavits supporting the allowance of $6858.75 in counsel fees and due to the contingency nature of counsel's fee arrangement, the benefits of the suit to the class, the quality of counsel's work, appellants sought a 50% multiplier in the case. The total counsel fees requested was $10,288.13.

Appellants concede that their entire basis for the allowance of counsel fees is grounded in 42 U.S.C. §§ 1983 and 1988. The statutes as we have quoted *allow* a court to award counsel fees when an action is brought to enforce a violation of the civil rights laws enumerated therein. The language of the statute was added to the section by an amendment in 1976 titled the "Civil Rights Attorneys' Fee Award Act of 1976," 5 U.S.C. Cong. & Admin. News, 94th Congress, 2d Session 5908.

The appellants contend in their bill of complaint that the disparity of wage scales amounted to a violation of the Equal Protection Clause of the Fourteenth Amendment of the

United States Constitution and was sufficient to bring this case under §§ 1983 and 1988 of the United States Code. The chancellor did not agree, nor do we. We conclude that the language of § 1988 is plain and that there is no ambiguity or obscurity and that therefore the usual and literal meaning of the terminology employed in the statute will prevail. *See Bright v. Unsatisfied Claim and Judgment Fund Board,* 275 Md. 165, 338 A.2d 248 (1975). Section 1988 as written plainly limits fee awards to a party who prevails in an action to enforce one of the federal civil rights laws. It does not provide for the award of fees in any other action.[3]

The legislative history of the Civil Rights Attorneys' Fees Award Act is consistent with its plain language. Section 1988 was amended in 1976 in response to *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In that case the Supreme Court refused to tax attorneys' fees based on the "private attorney general approach," leaving it to Congress to authorize an exception to the "American rule" that attorneys' fees are not ordinarily recoverable in the absence of statutory authorization. The purpose of the Civil Rights Attorneys Act as set forth in the Senate Report was to remedy gaps in our civil rights laws created by the Supreme Court's decision in *Alyeska* and to achieve consistency in our civil rights laws. 5 U.S.C. Cong. & Admin. News, 94th Congress, 2d Session, 1976, 5908. The Senate Report expressly recognized that the application of § 1988 "is limited to cases arising under our civil rights laws, a category of cases in which attorneys' fees have traditionally been regarded as appropriate." *Id.,* at 5912.

The federal courts have consistently held that in order to recover fees under § 1988 a party must bring an action to enforce one of the civil rights enumerated therein. In the

---

**3.** Nor does § 1988 create an independent right of action to recover attorneys' fees. *See, e.g.,* McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 n. 1 (11th Cir. 1981); Harding v. American Stock Exchange, 527 F.2d 1366 (5th Cir. 1976); Cain v. Archdiocese of Kansas City, Kansas, 508 F. Supp. 1021 (D.Kan. 1981); Stith v. Barnwell, 447 F. Supp. 970 (D.N.C. 1978).

recent case of *Lauritzen v. Secretary of the Navy,* 546 F. Supp. 1221, 1224 (C.D. Cal. 1982) it was held:

> Plaintiff did not bring this action to enforce any of the specific provisions (i.e., § 1981, etc.) enumerated in § 1988. Instead, she claimed a right to relief directly under the United States Constitution and under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing private damage action for Fourth Amendment violations by federal officers). *See also Davis v. Passman,* 422 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment). Accordingly, plaintiff cannot obtain attorney's fees directly under 42 U.S.C. § 1988.

Similarly, in *Russo v. State of New York,* 672 F.2d 1014, 1023 (2d Cir. 1982), the Court stated:

> In section 1988 Congress has provided that a prevailing party in a section 1983 action can recover attorney's fees, however, it has not provided that a prevailing party in a malicious prosecution action can do so. In the absence of legislative intent and pronouncement, it was not within the province of the trial court to fashion an award of attorney's fees in this case. A court cannot appropriate a function which Congress has reserved for itself.

*Accord, Mathews v. United States,* 526 F. Supp. 993, 1008 (M.D. Ga. 1981) where the Court held that the plaintiff did not seek to assert a claim under any of the enumerated sections listed in § 1983 and therefore is not entitled to utilize § 1988 to obtain an award of attorneys' fees.

The Supreme Court has not yet ruled that state courts *must* entertain § 1983 actions but in a recent case held that these courts *may* open their doors to a § 1983 claim.

Appellants rely substantially upon the case of *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), to support its position. In that case the Supreme Court had

before it a dispute concerning two related issues arising under 42 U.S.C. §§ 1983 and 1988. The petitioners sued in the Maine Superior Court and alleged that the state of Maine and its Commissioner of Human Services violated § 1983 by depriving the complainants of welfare benefits to which they were entitled under the federal Social Security Act. A majority of the Supreme Court held that § 1983 encompassed claims based upon purely statutory violations of federal law and could be brought in state courts. *See Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). The Court further held that the fee provision of § 1988 is part of the § 1983 remedy whether the action is brought in federal or state court. [448 U.S. at 11].

In order to be entitled to the benefit of this holding by the Supreme Court, however, it must appear that the appellants have alleged and proven a "substantial" § 1983 claim. Appellants' sole federal claim was that defendant's action in paying the plaintiffs at a rate of pay inferior to that received by similarly qualified public school teachers in Baltimore City violates the Equal Protection Clause of the United States Constitution. This is not a substantial claim under section 1983.

This Court has held that legislation "creating different classifications of public employees and affording different treatment to each class" does not violate the Equal Protection Clause. *Abbott v. Administrative Hearing Board, Prince George's County,* 33 Md. App. 681, 336 A.2d 756 (1976). In *Montgomery County v. Walsh,* 274 Md. 502, 336 A.2d 97 (1975), the Court of Appeals, in light of a similar equal protection challenge, upheld a financial disclosure ordinance which required some public employees to disclose their financial holdings, but did not require disclosure of other public employees. It is to be noted that that case was appealed to the Supreme Court and was dismissed by that Court for "want of a substantial federal question." 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976).

In a 5th Circuit case, *Anderson v. Winter,* 631 F.2d 1238 (1980), it was held that state employees who have different

positions, even though their duties are similar, may be paid at different rates or receive different benefits. Similarly, a challenge to city policy which paid other city employees time and one-half overtime and police officers at their regular wage level was held not to be violative of the equal protection clause. *See Confederation of Police v. City of Chicago,* 481 F. Supp. 566 (N.D. Ill. 1980).

It seems clear to us on the basis of the cases we have cited that the appellants had no "substantial" *constitutional* right to be paid at the same rate as public school teachers of similar training and experience in the local jurisdiction and their right to redress was based entirely upon § 6-303 of the Education Article of the Maryland Code. Where a plaintiff cannot prevail upon his federal claim the federal courts have held that even if he prevails on his pendent state claim he is not entitled to and will not be awarded attorneys' fees. *See, e.g., Luria Brothers & Co., Inc. v. Allen,* 672 F.2d 347 (1982); *Haywood v. Ball,* 634 F.2d 740 (4th Cir. 1980). State courts have also held that they will not award counsel fees, under § 1988, to a party that prevails on state grounds only. *See, e.g., Still v. Personnel Board of Jefferson County,* 406 So.2d 860 (Ala. 1981). In a strikingly similar case it was held that where the plaintiff had failed to show deprivation "of any constitutional right" as is required in order to claim relief, the plaintiff was not entitled to recover attorneys' fees under 42 U.S.C. § 1988. *See Ward Lumber Company v. Brooks,* 273 S.E.2d 331 (N.C. 1981).

The appellees raise the question of whether state courts are *required* to open their doors to actions under 42 U.S.C. § 1983. The Supreme Court has on at least three occasions reserved the question whether state courts must open their doors to these actions.[4] It is not necessary for us to reach that issue in this case as we agree with the chancellor that the complaint in this case was not brought under § 1983.

---

4. Maryland has entertained actions under 42 U.S.C. § 1983. *See* DeBleecker v. Montgomery County, Maryland, 292 Md. 498, 438 A.2d 1348 (1982). However, the Supreme Court has reserved the question whether state courts must entertain such actions. Maine v. Thiboutot, *supra,* and Martinez v. California, *supra.*

It is correct that the complainants herein were the prevailing parties even though the case never proceeded to trial. The plaintiffs may be considered the prevailing parties "if a significant issue is resolved so as to achieve some of the benefit through litigation." A party may prevail through compromise as well as trial and judgment. *See, e.g., Bonnes v. Long,* 599 F.2d 1316 (4th Cir. 1979).

It is clear to us that the Maryland courts did not need U.S. § 1983 to adjudicate the alleged federal claim in this proceeding. Maryland has on innumerable occasions considered and decided federal equal protection claims without the necessity of resorting to § 1983. *See Attorney General of Maryland v. Waldron,* 289 Md. 683, 426 A.2d 929 (1981); *Montgomery County v. Walsh, supra; Maryland Mortgage & Investment Co. v. State,* 25 Md. App. 8, 332 A.2d 675 (1975).

More than 20 years ago, the Court of Appeals recognized that a Maryland court could decide a federal equal protection claim independently without a § 1983 violation. In *Maryland Committee for Fair Representation v. Tawes,* 228 Md. 412, 180 A.2d 656 (1962), the Court had before it an alleged malapportionment of the General Assembly challenged as a violation of 42 U.S.C. § 1983 as well as a violation of the Equal Protection Clause of the Fourteenth Amendment. The Court held that it was error for the lower court to sustain a demurrer to the Fourteenth Amendment claim but that the § 1983 claim was properly dismissed. The Court stated:

> Section 1983 of Title 42 U.S.C., though it creates a new liability and affords means for its enforcement and for the enforcement of constitutional and other rights for the protection of which the new cause of action and remedies are given, does not create the constitutional or other rights for the violation of which it affords a cause of action and remedies. On the allegations of the bill, we are unable to see any "violation" of Section 1983. We conclude that there is no basis for a declaration that [42 U.S.C. § 1983]

is violated by the present Maryland legislative apportionment, even if that apportionment should be found to be invalid under the Fourteenth Amendment. *[Id.,* at 424-25].

In this case the court below could have disposed of the equal protection issue without any consideration of the applicability of § 1983. The cause of action was based on a state law issue. It may be reasonably inferred that the sole reason for contending that § 1983 was applicable is to justify the allowance of counsel fees. We do not believe this was contemplated by Congress when it adopted §§ 1983 and 1988.

Finally, we conclude that the failure of the complainants to bring an action to enforce the civil rights laws and to maintain a substantial federal claim in this proceeding would be sufficient grounds for the chancellor to have decided this case without resort to § 1983 and therefore would have provided sufficient "special circumstances" so as to make an award of counsel fees against the State Superintendent of Schools unjust.

*Decree affirmed.*
*Costs to be paid by appellants.*