528

602 A.2d 201

**TOWN OF NEW MARKET FREDERICK
COUNTY, Maryland, et al.**

v.

**MILREY, INC.–FDI PARTNERSHIP
f/k/a NVR–FDI Associates.**

No. 744, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Feb. 28, 1992.

David O. Godwin, Jr. (Montedonico, Hamilton, Altman & Nash, P.C., on the brief), Frederick, for appellants.

Ralph Gordon (Leslie A. Powell and Gordon & Simmons, on the brief), Frederick, for appellee.

Argued before BISHOP, GARRITY and ROSALYN B. BELL, JJ.

BISHOP, Judge.

Appellant, Town of New Market (the "Town"), appeals from an order of the Circuit Court for Frederick County (Stepler, J.) that granted summary judgment in favor of

appellee, Milrey, Inc.–FDI Partnership ("MFP"). MFP was formerly known as NVR–FDI Associates. A Notice of Substitution of a Party was filed pursuant to Md. Rule 2–241 substituting Milrey, Inc.–FDI Partnership for NVR–FDI Associates. Throughout our opinion, we refer to appellee as "MFP."

## ISSUES PRESENTED

The Town presents the following issues:

I. Did the trial court err in granting MFP's motion for summary judgment by failing to give legal effect to the Town's curative actions to correct allegedly defective wording in its October 11, 1989 Annexation Resolution?

II. Did the trial court err in granting MFP's motion for summary judgment by construing Md. Ann.Code art. 23A, § 19 to require precise mathematical certainty in the courses and distances description in municipal annexation resolutions?

We hold that the trial court did not err in either respect.

## FACTS AND PRIOR PROCEEDINGS

This case returns to this Court after remand to the circuit court in an unreported opinion, *Town of New Market v. NVR–FDI Associates*, No. 2003, September Term, 1989, filed October 17, 1990. The facts of that case are pertinent to our current discussion.

On July 12, 1989, certain residents of Frederick County presented a petition for annexation to the Town. On October 11, 1989, the Town Council adopted a resolution of annexation (the "Annexation Resolution"). As described by the Town in a document entitled Outline for the Extension of Services, the area to be annexed was 139.308 acres: 96.71 owned by MFP; 26.37 owned by the Board of Education; and the remainder owned by private individuals.

The only description in the Annexation Resolution of the property to be annexed was a courses and distances description.

On October 17, 1989, MFP filed a Complaint for Declaratory, Injunctive and Other Relief in the Circuit Court for Frederick County containing three counts. These counts are not the subject of this appeal. Thereafter, the Complaint was amended to contain a fourth count that alleged that the courses and distances description in the Annexation Resolution failed to close, leaving a gap of over 500 feet, and, thus, the resolution failed to comply with Md.Ann.Code art. 23A, § 19. MFP subsequently filed a Motion for Summary Judgment on Count IV of the Amended Complaint pursuant to Md. Rule 2–501.

In November 1989, after a hearing, the circuit court granted MFP's request for an interlocutory injunction. The order stayed the 45 day time period in which to petition for a referendum on the Annexation Resolution.

A hearing on the motion for summary judgment on Count IV was held on January 11, 1990. At the hearing, the Town produced for the consideration of the court "A Resolution Amending A Resolution To Correct Defects In Wording" (the "Amending Resolution"). The Amending Resolution was purportedly adopted by the Town Council at a regularly scheduled meeting held the evening before, January 10, 1990, and intended to correct defects in the previous description. It stated that: "[t]he courses and distances description of the area proposed to be included in the change of the corporate boundaries contained an error in wording," and "[i]t was the intention of the Mayor and Town Council of the Town of New Market to accurately describe the area to be annexed[.]" The Amending Resolution contained several pages of a courses and distances description intended to replace the inaccurate description in the Annexation Resolution. It is uncontested that the Amending Resolution was adopted without first publishing it. According to an affidavit supplied by MFP, two lots were sold during the time period between the adoption of the Annexation Resolution and the Amending Resolution.

The Town also produced for the trial court's consideration the affidavit of a registered land surveyor who stated that

the Annexation Resolution and the Amending Resolution together described the exact area proposed to be included in the annexation.

Counsel for the Town suggested that the Amending Resolution "rendered moot th[e] fourth count in [MFP's] Complaint, as well as the summary judgment motion." The court, however, responded that the Amending Resolution and the affidavit were not before it and granted MFP's motion for summary judgment on Count IV. The Order of the court granting MFP's motion for summary judgment as to Count IV of the Amended Complaint stated:

the description of the property to be annexed in the Resolution of annexation adopted by the Town of New Market fails to comply with the requirement of Article 23A, § 19(b) that the resolution describe by a survey of the courses and distances 'the exact area proposed to be included in the change.' It is undisputed that the description in the Resolution fails to close by over 526 feet. Accordingly, this Court finds and declares that the annexation Resolution adopted by the Town of New Market on October 11, 1989 is void and not effective to annex the property[.]

This decision rendered the other three counts moot and was a final appealable judgment.

The Town appealed from the Order contending that the trial court committed reversible error in failing to consider the Amending Resolution and the affidavit of the registered land surveyor. This Court vacated the judgment of the trial court and remanded the case for further proceedings. On remand we directed the trial court to rule on the admissibility of the affidavit and the Amending Resolution. We stated that if the court determined that the documents were admissible, it should determine the effect, if any, of the documents. If the documents raised a genuine dispute as to a material fact, the court should not grant summary judgment. If, however, the documents did not affect the validity of the original resolution then, we stated, the court might grant MFP's motion for summary judgment.

After remand, the trial court entered an injunction staying the remainder of the 45 day period in which to petition for referendum, and later extended the injunction. A hearing on the merits as to the remand was held on March 19, 1991. The court first ruled that the affidavit of the registered land surveyor was not admissible because it was not based on personal knowledge. It then stated:

But the real question here is[: I]s the Town of New Market allowed to pass an amendment to a resolution of this type without going through the due process requirements that [are] set out under Article 23A, § 19[.]

The court then explained that Article 23A, § 19 sets out very specifically what should be a part of your resolution, what you have to describe, what you have to have, percentages, what notice you have to give, publication, how you have to advise people of the hearing that's to be held, how you may initiate it either by the town or the county or a group of registered voters.

When the Town passed the Amending Resolution, the court explained, it was really "passing another resolution of annexation" that would have to "follow the due process requirements that are set out." "[I]f you do amend a resolution[,] essentially what you end up with is a new resolution that would have to comply with the due process notice requirements under § 19."

The court concluded:

It is perfectly obvious ... that it was painstaking [sic] by the legislature to set out the requirements to be sure that there was due process noted that every single person that could be affected by this annexation would know that it was proposed and that it was published that you give notice to the county, etc., etc., etc. And that definitely has not occurred here.

The court then granted MFP's motion for summary judgment and thereafter filed an Order stating:

[MFP's] Motion for Summary Judgment is granted because the description of the property to be annexed in the

Resolution of annexation adopted by the Town of New Market fails to comply with the requirement of Article 23A, § 19(b) that the resolution describe by a survey of the courses and distances 'the exact area proposed to be included in the change.' It is undisputed that the description in the Resolution fails to close by over 526 feet.

\* \* \* \* \* \*

[Neither the affidavit of the surveyor nor the Amending Resolution] raise a material issue of fact because the adoption of the amending resolution was in violation of Article 23A, § 19, for the reasons expressed in my oral opinion on March 19, 1991.

\* \* \* \* \* \*

[T]he [Amending Resolution] is void and not effective to annex the property of the plaintiff, individual defendants or the Board of Education of Frederick County into the Town of New Market.

## DISCUSSION

We affirm the judgment of the trial court for the reasons stated *infra*.

### I.

#### *Effect of the Amending Resolution*

The authority of the Town to pass resolutions affecting its charter is conferred upon it by the Maryland Constitution and the Code. The Maryland Constitution provides that a municipal corporation has:

> power and authority, (a) to amend or repeal an existing charter or local laws relating to the incorporation, organization, government, or affairs of said municipal corporation heretofore enacted by the General Assembly of Maryland, and (b) to adopt a new charter, and to amend or repeal any charter adopted under the provisions of this Article.

Md. Const. art. XI–E, § 3. This constitutional provision is implemented by Md.Ann.Code art. 23A, § 1 (1990), which provides:

> The inhabitants of every incorporated municipality in Maryland constitute and shall continue to be a body corporate ... and may pass and adopt all ordinances, resolutions or bylaws necessary or proper to exercise the powers granted herein or elsewhere.

Annexation of land to municipal boundaries is governed by Md.Ann.Code art. 23A, § 19.

Subsection (a) of § 19 provides that the legislative body of every municipal corporation in Maryland "may enlarge its corporate boundaries *as provided in this subheading* [.]" Md.Ann.Code art. 23A, § 19(a). (Emphasis added.) An annexation proposal may be initiated by either the legislative body of the municipal corporation or by written petition signed by certain persons who reside in the area to be annexed. *Id.* at § 19(b), (c). Subsection (b), which deals with changes initiated by the legislative body, mandates in pertinent part:

> The resolution shall describe by a survey of courses and distances, and may also describe by landmarks and other well-known terms, *the exact area* proposed to be included in the change, and shall contain complete and detailed provisions as to the conditions and circumstances applicable to the change in boundaries and to the residents and property within the area to be annexed.

*Id.* at § 19(b). (Emphasis added.) The requirement that the resolution set forth the "exact area" to be annexed also applies when the annexation is initiated by petition. *See* Md.Ann.Code art. 23A, § 19(c) ("The resolution in form and content shall conform to the requirements of this section.").

Section 19 further requires:

> (d) *Notice and hearing.*—After the introduction of the resolution into the legislative body of the municipal corporation, the chief executive and administrative officer of the municipal corporation shall cause a public notice

thereof to be published not fewer than four times at not less than weekly intervals in a newspaper of general circulation in the municipal corporation and the area to be annexed, briefly and accurately describing the proposed change and the conditions and circumstances applicable. The public notices shall specify a time and place at which a public hearing will be held by the legislative body on the resolution[.]

Md.Ann.Code art. 23A, § 19(d). "Immediately" after the first publication of the public notice, a copy of the notice must be provided to the county government and to any regional or State planning agencies that have jurisdiction in the county. *Id.* These agencies, the State, and the county have the first right to be heard at the public hearing on the resolution. *Id.*

In addition to, but not as a part of, the resolution, the legislative body of the municipality must provide "a proposed outline for the extension of services and public facilities into the area proposed to the annexed" for "public review and discussion" at the public hearing. *Id.* at § 19(*o* ). The statute states:

The outline shall be open to public review and discussion at the public hearing, but amendments to the outline may not be construed in any way as an amendment to the resolution, nor may they serve in any manner to cause a reinitiation of the annexation procedure then in process.

*Id.*

After the public hearing, the legislative body may enact the resolution "in accordance with the usual requirements and practices applicable to its legislative enactments." *Id.* at § 19(e). The resolution may not, however, become effective until at least 45 days after its final enactment. *Id.* Within these 45 days, certain residents and qualified voters located in the area to be annexed may petition the chief executive and administrative officer of the municipal corporation for a referendum on the resolution. *Id.* at § 19(f). Similarly, other qualified voters of the municipal corpora-

tion may petition for a referendum, *id.* at § 19(g), and the governing bodies of the county or counties in which the municipality is located may petition for a referendum. *Id.* at § 19(h).

The Town contends that the circuit court erred in failing to give effect to the Amending Resolution. The Town argues: (1) the Town Council derived its power to cure the defective wording in its Annexation Resolution from legislative power granted by Article 23A, § 1; (2) that the power to annex property into the Town is an express grant of power by the State government subject not only to the specific procedures of Article 23A, § 19 but also to the Town Council's legislative power granted by Article 23A, § 1; and (3) that the Town Council's exercise of its legislative power to cure the Annexation Resolution created no conflict with or derogation of the procedural strictures of Article 23A, § 19. With regard to this last contention the Town adds: "The Annexation statute states in very certain terms that the process for adopting the Resolution for Annexation after the Town Council holds a hearing is the same as enacting any other municipal legislation." We are not persuaded.

Municipalities are creatures of the State. *Cotham and Maldonado v. Board of County Comm'rs,* 260 Md. 556, 562, 273 A.2d 115 (1971).

> "It is universally recognized that every municipal corporation is subject to absolute control by the Legislature. However great or small its sphere of action, it remains the creature of the State exercising privileges and powers subject to the sovereign will."

*Id.* (quoting *Neuenschwander v. Washington Suburban Sanitary Comm'n,* 187 Md. 67, 74, 48 A.2d 593 (1946)). The legislature has given the inhabitants of incorporated municipalities the power to "pass and adopt all ordinances, resolutions or bylaws necessary or proper *to exercise the powers granted herein or elsewhere.*" Md.Ann.Code art. 23A, § 1. (Emphasis added.) Furthermore, the legislature has provided a mechanism by which "[t]he legislative body

... of every municipal corporation in this State may enlarge its corporate boundaries[.]" *Id.* at § 19(a).

 The Town argues that the Town Council had power to cure any defects in the Annexation Resolution by exercising the power granted to it under Article 23A, § 1 and passing an Amending Resolution that corrected the defects in the Annexation Resolution. The Town contends that the power to annex property into the Town is subject to the Town Council's legislative power granted by Article 23A, § 1. The Town misreads this section. Section 1 only confers on the Town the power to pass resolutions as necessary and proper to exercise other powers granted by the legislature. Section 1 is a general grant of power and must be exercised in accordance with directives contained in other specific statutory grants of power. Here, the Town Council's power to pass resolutions annexing property into the Town must comply with the legislative directives of § 19. May the Town Council pass an annexation resolution amending the description of property contained in a prior resolution without publishing the amending resolution or holding a public hearing with regard to it? Based on our review of § 19, we hold that a resolution that changes the description of property to be annexed contained in a previous annexation resolution is subject to all the statutory safeguards, including notice and public hearing, to which the original annexation resolution was subject.

 In construing a statute, we strive to ascertain and effectuate the intent of the legislature. *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471 (1988). In determining legislative intent, we look first to the language of the statute. *State v. Patrick A.*, 312 Md. 482, 487, 540 A.2d 810 (1988). The only point at which amendments are mentioned in § 19 is in subsection (*o* ), which deals with the proposed outline of extension of services that must be provided by the legislative body of the municipal corporation. Subsection (*o* ) provides in pertinent part:

The outline shall be open to public review and discussion at the public hearing, but amendments to the outline may

not be construed in any way as an amendment to the resolution, nor may they serve in any manner to cause a reinitiation of the annexation procedure then in process. Md.Ann.Code art. 23A, § 19(*o*). This subsection indicates that the legislature did contemplate the "reinitiation of the annexation procedure." It distinguished, however, between the outline for the extension of services and the resolution; it did not intend for amendments to the outline to reinitiate the annexation procedure. The statutory scheme of § 19 requires the reinitiation of the annexation procedure, when, as in the case *sub judice,* an amending resolution that contains a new description of the property to be annexed is introduced to the Town Council.

Section 19 requires that, after the introduction of an annexation resolution into the legislative body of the municipal corporation, a notice "briefly and accurately describing the proposed change" and stating "the time and place of the public hearing on the resolution" be published in a newspaper of general circulation in the municipal corporation and in the area to be annexed. Md.Ann.Code art. 23A, § 19(d). The general public as well as State, county, regional and State planning agencies have a right to be heard at a public hearing on the annexation resolution. Most importantly, § 19 gives residents in the area to be annexed, residents of the municipality, and the governing body of the county or counties in which the municipality is located, the right to petition for a referendum on the annexation resolution. *Id.* at § 19(f) to (h).

■ In the case *sub judice,* it is undisputed that the courses and distances description of the property contained in the Annexation Resolution failed to close by approximately 526 feet. Moreover, this description was the only description of the property contained in the Annexation Resolution. The public notice, which announced the hearing, was published in the newspaper, and briefly described the property to be annexed in terms of lot numbers. The notice then stated that a complete "metes and bounds description" and copies of the "Resolution in its entirety" were available

during regular business hours at the law offices of a local attorney. The public was neither notified of the hearing at which the Amending Resolution was passed, nor provided copies of the Amending Resolution containing the revised description of the land to be annexed. The only resolution available to the public contained an inaccurate description of the property to be annexed.

We do not question the basic authority of the Town Council to amend annexation legislation. However, any amendment must be passed in accordance with the procedural requirements of § 19, which contains a number of procedural safeguards including the requirements of public notice, and a hearing. People residing in the area to be annexed, as well as other citizens of the municipality, are given the right to petition for a referendum on the annexation resolution. Before citizens can decide whether to support or to oppose a proposed annexation of land to the corporate boundaries, they must have accurate information regarding the annexation. Accurate information is critical in order for a citizen or other interested entity to exercise intelligently the rights of notice and participation provided by the statute. The statutory protections of § 19 require that an accurate description of the land to be annexed be provided to the public. To permit the Town to give notice of, and hold a public hearing on, an annexation resolution containing one description, and then to permit a subsequent resolution containing a different description, without requiring the same notice and hearing procedures required of the former, would render the protections afforded under § 19 meaningless.

The Town relies heavily on § 19(e), which states that "[f]ollowing the public hearing, the legislative body may proceed to enact the resolution, in accordance with the usual requirements and practices applicable to its legislative enactments." Md.Ann.Code art. 23A, § 19(e). The Town argues, "[t]his statute emphasizes that the legislative processes of the municipality are determinative over any proce-

dural restrictions not specifically delineated by the General Assembly[.]" The Town contends that "[a]ccording to art. 23A, 19(e) at the very most, the particular restrictions dictated by art. 23A, 19(b) apply only up until the time of the public hearing by specifically stating that 'following the public hearing, . . .' the 'usual' legislative procedures of the Town Council apply." The Town misreads § 19(e). The resolution that the Town may enact in accordance with its usual legislative practices is "the resolution" that was the subject of notice and a public hearing. Although § 19(e) authorized the Town Council to enact the Annexing Resolution that was the subject of notice and a public hearing, it did not authorize the Town Council to enact an Amending Resolution that was not the subject of notice and a public hearing.

In support of its arguments, the Town cites cases in which legislative bodies have amended legislation to correct defects. The authority cited by the Town is distinguishable and unpersuasive here.

In *Hitchins v. Mayor and City Council of Cumberland,* 215 Md. 315, 138 A.2d 359 (1958), the Court of Appeals examined whether a municipal corporation may correct a pending ordinance by passing another ordinance during the period in which the first ordinance awaited referendum. The statute at issue in *Hitchins* authorized municipal corporations to sell municipal bonds to finance public debt. The statute deferred to procedures for borrowing money as established in municipal charters when those procedures differed from those provided in the statute. A Cumberland ordinance authorizing a bond issue provided that in the event no referendum was required, bonds were to be advertised and offered for sale on a specified date. No date was fixed for the sale of the bonds in the event a referendum was required. A petition for referendum on the bond ordinance was filed. The city did not attempt to sell the bonds on the fixed date. Instead, it passed an amendatory ordinance that purported to give the Mayor and the City Council authority to fix a definite date for the sale of the bonds by subsequent ordinance. The amendment further

provided that any referendum held on the original ordinance would be considered as having been held on the ordinance as amended. The bill of complaint alleged that the Mayor and City Council did not have authority to amend the original ordinance, or to prohibit a further referendum on the new ordinance, or to refer the new ordinance to a vote along with the original one.

The *Hitchins* Court held:

> In the instant case there is no question as to the reasonableness of the delay under the circumstances, and we think the language of sec. 32(3), as to the form of notice soliciting bids, cannot fairly be said to require the fixing in advance of a definite date for receiving bids in the event that a referendum is held.... [W]e think the section itself reposes a large measure of discretion in the municipal authorities, for in the concluding sentence of sec. 32 it is provided that "Each such resolution or ordinance may contain such other provisions, not inconsistent with this subheading, as the legislative body of such municipal corporation may deem appropriate, and may expressly permit the executive of such municipal corporation to make such modifications in the forms adopted by such resolution or ordinance as will not alter the substance of such forms." The only forms mentioned in the section are the form of the bonds and the form of the notice soliciting bids. Modification of the form of notice would seem to include modification of the date for receiving bids.... We perceive no reason why the legislative body ... cannot by a subsequent ordinance make a ... modification. Indeed, sec. 34(3) contemplates the issuance of bonds after a favorable referendum at a date that could not be determined until after the election, and even the possibility of a second referendum on the same question after the lapse of a year.

*Id.* at 324, 325, 138 A.2d 359.

To the contention that the city did not have the power to modify the original ordinance after the filing of the referendum the Court said:

It has been held that changes which might have the effect of defeating the purpose of a referendum are invalid, and it is so provided in some constitutions and statutes. The cases are collected in a Note 33 A.L.R. 2d 1118, 1130. Still, it is the general rule that a city may amend an ordinance pending a referendum under some circumstances, as where the action is in good faith and taken to avoid objections to the original ordinance.... [W]e think it would be carrying technical objection to an unwarranted extreme, to hold that the amendatory Ordinance was invalid.... [I]t clarifies the procedure, and we see no good reason why the protestants should be put to the expense of a new petition in order to obtain a referendum on the desirability of the bond issue.

*Id.* at 325, 138 A.2d 359. (Citations omitted).

*Hitchins* is distinguishable. In *Hitchins*, the amendment to the ordinance involved only the date of the sale of municipal bonds. A referendum on the bond issue had already been called. The relevant issue before the electorate was whether it wanted to sell bonds at all. When the sale was to be held was not a relevant factor in deciding whether to sell bonds. If in *Hitchins*, the amendatory ordinance had contained a change in the amount of the bonds or in the method of payment, we have no doubt the Court would have decided the case differently. We see the description in the case *sub judice* analogous to the change in amount or method of payment in a bond issue ordinance.

 ▪ The Town argues that "[t]o rob municipalities of the ability to cure inconsequential errors would rob them of the entire power which the state government granted." We cannot, by any stretch of imagination, characterize the defect in the Annexation Resolution as "inconsequential." The description failed to close by 526 feet. The land to be annexed could have continued from the gap left by the description in any number of undisclosed directions. The Amending Resolution does not correct an "inconsequential defect," rather, it corrects something essential. The description of the property to be annexed is so essential that

the second resolution is properly considered a "new" resolution subject to all of the statutory safeguards to which the original resolution was subject.

At issue in *O.C. Taxpayers v. Ocean City*, 280 Md. 585, 375 A.2d 541 (1977) was the validity of charter amendments adopted by the Mayor and City Council of Ocean City changing the qualifications for voters in the city elections. Prior to the charter amendments, all adult residents of Ocean City and non-residents owning property with an assessed value of at least $1,000 were qualified to vote. The resolutions in question *inter alia* limited the right to vote to persons who had resided in Ocean City for the four months preceding an election. Non-residents who owned more than $1,000 worth of property filed suit alleging that the charter amendments were void because, among other reasons, their titles did not conform to the requirements of Article 23A, § 13(c), which required that charter amendments be limited to a single subject described in the amendment's title.

After suit was filed, the Mayor and City Council adopted a new series of charter resolutions that recited the improper titling issue and contained more descriptive titles. After a hearing on the merits, the trial court decided *inter alia* that the titles of the original resolutions conformed to statutory requirements. On appeal, both parties requested that the court take judicial notice of the later resolutions in its disposition of the case. The Court did so, and on appeal it held that any titling defects were cured by the subsequent enactments. "It is well established in Maryland that courts will not ordinarily consider an alleged defect in the title of an earlier enactment when a subsequent valid statute on the same subject cures the alleged title defect in the earlier act." *O.C. Taxpayers*, 280 Md. at 591, 375 A.2d 541.

The critical difference between *O.C. Taxpayers* and the case *sub judice* is that in *O.C. Taxpayers* there was no suggestion that in enacting the second set of resolutions the legislative body failed to follow the required legislative procedures. The case holds that "subsequent valid stat-

ute[s]" may correct defects. In the case *sub judice,* the subsequent resolution was not enacted in accordance with statutory requirements; therefore, *O.C. Taxpayers* is inapposite.

In *O.C. Taxpayers,* at 592–93, 375 A.2d 541, the Court observed:

Moreover, even if the enactment of the July resolutions would have involved a technical violation of § 17, we could not agree that, as a consequence, the resolutions should be held invalid. As this Court said in *Mayor of Hagerstown v. Lyon,* 236 Md. 222, 234, 203 A.2d 260 (1964), with respect to a similar requirement in § 17(a), "[t]he obvious objectives of Section 17(a) ... [are] to permit those who are considering legislation to ascertain, quickly and easily, proposed new legislation or changes in the old." Plaintiffs do not allege, nor is it conceivable under the facts shown by this record, that any member of the City Council or any interested person was misled by the failure of the July resolutions to identify or repeal the text of the January resolutions in the body of the July resolutions. The Mayor and City Council clearly intended the July resolutions to cure any formal defects that might be found to exist in the January resolutions as a result of the plaintiffs' pending suit. This fact is recited in the preamble of each of the July resolutions. It is clear that it was so understood at the City Council meeting where the July resolutions were considered.

Clearly, the foregoing observation could not be made of the disputed amendatory resolution in the case before us.

■ Similarly, the Town's reliance on *Dryfoos v. Hostetter,* 268 Md. 396, 302 A.2d 28 (1973), and *Leonardo v. Board of County Comm'rs,* 214 Md. 287, 134 A.2d 284 (1957), *cert. denied,* 355 U.S. 906, 78 S.Ct. 332, 2 L.Ed.2d 260 (1975), is misplaced. These cases stand for the proposition that the General Assembly may pass "curative" statutes—those having a retroactive effect that remedy a defect in previous legislation. In these cases, the legislature

did not depart from the formalities required by statute to enact the new legislation.

## II.

### *Mathematical Certainty*

■ The Town also contends that the trial court erred in construing § 19 to require "precise mathematical certainty" in the courses and distances description of the Annexation Resolution. This is essentially an argument in favor of the validity of the first annexation resolution. Again, we are not persuaded by the Town's argument.

The Code provides that "[t]he resolution shall describe by a survey of courses and distances ... the exact area proposed to be included in the change." Md.Ann.Code art. 23A, § 19(b). Unless the context indicates otherwise, the term "shall" is mandatory and denotes an imperative obligation. *Bright v. Unsatisfied Claim and Judgment Fund Board*, 275 Md. 165, 169, 338 A.2d 248 (1975). It is undisputed that the courses and distances description in the Annexation Resolution failed to close by 526 feet. The Amending Resolution replaced several pages of description in the Annexation Resolution. While "precise mathematical certainty" may not be a statutory requirement, we hold that the statute requires that the description of the property to be annexed contained in the annexation resolution be sufficient to apprise a reader of the property to be annexed. It is impossible to determine the property to be annexed from a property description that fails to close by 526 feet.

■ The Town cites *Mayor of Hagerstown v. Lyon*, 236 Md. 222, 203 A.2d 260 (1964), for the proposition that failure to comply strictly with a notice requirement when amending a municipal charter is not fatal to the adoption of the resolution. The Code section at issue in *Mayor of Hagerstown* required that changes to the text of a municipal charter be noted in any resolution amending the charter with special symbols, including underscoring and double parentheses. The resolution that was the subject of the

case did not comply with the statute. The Court held that "the provisions of the quoted portion of Section 17(a) do not constitute conditions precedent which must be strictly adhered to in order that a proposed and passed resolution may become effective." *Mayor of Hagerstown,* 236 Md. at 234, 203 A.2d 260. However, the court also stated:

> The obvious objective of Section 17(a) (as well as the Rules) is to permit those who are considering legislation to ascertain, quickly and easily, proposed new legislation or changes to the old.
>
> \* \* \* \* \* \*
>
> To hold under the circumstances presented here—where no fraud or trickery has been attempted or perpetrated, and no one has been misled ... would, we think, place a premium on form and require a disregard of substance.
>
> \* \* \* \* \* \*
>
> We think, however, that the record shows there was substantial, if not full, achievement of the purpose of the statute to acquaint the electorate fully with the law involved, and nothing to show that the deviation from the prescribed mode of acquainting, misled the voters or prevented, frustrated or interfered with a free, full and intelligent expression of the popular will.

The same cannot be said of the case *sub judice.* The requirement that an annexation resolution contain an exact description is to alert persons who may be affected by the annexation so that they may exercise their rights as contained in the annexation statute. Without an accurate description this objective is not achieved.

We have reviewed the cases from other jurisdictions cited by the Town involving annexation resolutions with flawed property descriptions *i.e. City of Douglas v. City of Sierra Vista,* 21 Ariz.App. 71, 515 P.2d 896 (1973); *City of Suffolk v. County of Nansemond,* 212 Va. 1, 181 S.E.2d 621 (1971), and we do not find them persuasive. In these cases, one could determine what property was to be annexed from the annexation resolution. *Douglas* involved a typographical

error in one call; moreover, the resolution contained an accurate description of the property in words, and an accurate map of the property was referenced in the resolution and attached. Similarly, in *Nansemond*, the annexation petition described the property to be annexed in relation to monuments. The court's decision was based on the rationale that a surveyor, engineer, or layman could "walk that line and follow it on the ground with reasonable certainty." 181 S.E.2d at 622. The facts here are clearly distinguishable.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.