619 A.2d 583

STANLEY BROOKINS AND ARVAY LITTLE, PLAINTIFFS–APPEL-LANTS, v. DAWN MURRAY, DEFENDANT, AND KENNETH D. MERIN, COMMISSIONER OF THE DEPARTMENT OF INSUR-ANCE STATE OF NEW JERSEY AND KARL WEIDEL, EXECU-TIVE DIRECTOR UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANTS–RESPONDENTS.

Argued October 14, 1992—Decided February 1, 1993.

*Gerald H. Baker* argued the cause for appellants (*Baker, Garber, Duffy & Pedersen,* attorneys).

*Floyd F. Lombardi* argued the cause for respondents (*De Sevo, Cerutti & Lombardi,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

The Unsatisfied Claim and Judgment Fund is a State-administered fund created to provide compensation for the injured victims of automobile accidents caused by persons who are not financially responsible. Under the statutory scheme governing the Fund, a notice of intention to make a claim must be filed within ninety days after the automobile accident or within fifteen days after a disclaimer of insurance coverage on the person who caused the accident. In this case, plaintiffs were the victims in an automobile accident caused by a party who they believed was insured. That belief later turned out to be mistaken. As a result, when plaintiffs filed claims against the Fund, the statutory time periods had expired. The Fund rejected the claims as untimely.

The basic issue on appeal is whether the statutory provisions governing the time within which claims must be filed with the Unsatisfied Claim and Judgment Fund should be tolled until the claimant reasonably discovers that the party responsible for the accident is not insured.

I

On August 30, 1988, plaintiffs, Stanley Brookins and Arvay Little, were injured when the car in which they were passengers struck a light post. Dawn Murray, the car's owner, was driving, and no other vehicle was involved. Apparently, at the time of the accident, Murray told plaintiffs and the police that she was insured by Allstate Insurance Company. The police report indicated Allstate as Murray's insurer and referred specifically to an insurance-policy number.

Brookins and Little filed complaints against Murray on December 15, 1988. Their counsel sent a copy of Brookins's summons and complaint to Allstate on February 6, 1989, and a copy of Little's on April 3, 1989. Allstate sent Murray a letter dated April 28, 1989, disclaiming coverage. The letter stated that Allstate had cancelled Murray's policy on July 26, 1988, five weeks before the accident, for nonpayment of premiums. Allstate sent copies of that termination letter to Brookins, Little, and their counsel. Counsel received the letter on May 3, 1989.

On May 30, 1989, nine months after the accident and twenty-seven days after receipt of Allstate's no-coverage letter, Brookins's and Little's counsel filed Notices of Intention to Make Claim on the Unsatisfied Claim and Judgment Fund (UCJF or Fund). As indicated before, the statute governing the Fund requires the filing of such notice within either ninety days after the accident or fifteen days after receipt of an insurer's disclaimer of coverage. *N.J.S.A.* 39:6–65. (The notices were dated May 24, 1989, but the cover letter was dated May 30, 1989.) On July 24, 1989, the Fund notified counsel that the matter was on "ineligible status" because the notices had not been filed within ninety days of the accident.

Brookins and Little filed amended complaints on August 18, 1989, adding as an additional defendant Glenn R. Paulsen, Director of the Division of Motor Vehicles, and second amended complaints on September 28, 1989, substituting Kenneth D.

Merin, Commissioner of Insurance, for Paulsen. On February 1, 1990, Brookins and Little filed a new complaint, this time against Murray, Merin, and Karl Weidel, Executive Director of the UCJF. On February 11, 1990, a trial court ordered consolidation of Brookins's and Little's actions, and on April 12, 1990, the court dismissed the matter with regard to Merin.

Even before that dismissal, Brookins and Little filed a new complaint against defendants. All defendants except Murray answered, raising the defense of late notice to the Fund. Defendants Merin and Weidel moved for summary judgment, and the trial court granted the motions. The Appellate Division affirmed the trial court's judgment in an unreported *per curiam* opinion. We granted plaintiffs' petition for certification, 130 *N.J.* 8, 611 *A.*2d 648 (1992).

## II

The Unsatisfied Claim and Judgment Fund was established by statute in 1952, *L.* 1952, *c.* 174; *N.J.S.A.* 39:6–60 to –91, "to provide a measure of relief for persons who sustain losses or injury inflicted by financially irresponsible or unidentified owners or operators of motor vehicles, where such persons would otherwise be remediless." *Corrigan v. Gassert*, 27 *N.J.* 227, 233, 142 *A.*2d 209 (1958) (citing *Dixon v. Gassert*, 26 *N.J.* 1, 138 *A.*2d 14 (1958)). The Legislature was attempting to "ameliorate the injustice to the victims resulting from a basic shortcoming of the tort liability system: the futility or impossibility of prosecuting a civil damage claim against a financially irresponsible or even unknown tort feasor." *White v. Violent Crimes Compensation Bd.*, 76 *N.J.* 368, 380, 388 *A.*2d 206 (1978) (comparing the remedial purposes of the UCJF Law and the Criminal Injuries Compensation Act).

Under the statute, a "qualified person [who] recovers a valid judgment in a court of competent jurisdiction in this State" against the owner or operator of any motor vehicle may, after all proceedings and appeals have been exhausted, apply to that

court for an order directing payment out of the Fund for any amount unpaid for bodily injury, death, or property damage exceeding a specified amount. *N.J.S.A.* 39:6–65. Such a "qualified person" (one who has automobile insurance coverage, *N.J.S.A.* 39:6–62) may recover from the Fund on the timely filing of a notice of claim. *N.J.S.A.* 39:6–65.

■ The time requirements for the notice of claim are designed to encourage "timely inquiry and thus to safeguard the fund against fraud and imposition." *Giacobbe v. Gassert,* 29 *N.J.* 421, 425, 149 *A.*2d 214 (1959). Timely inquiry promotes the verifiability of claims. *See* Marian Joyce, *Tolling of Substantive Statutes of Limitation—White v. Violent Crimes Compensation Board,* 32 *Rutgers L.Rev.* 95, 106 (1979). The time requirements also ensure efficient administration of the Fund and protect the Fund's limited resources. *See Giacobbe, supra,* 29 *N.J.* at 426, 149 *A.*2d 214.

■ Under the UCJF statute as first enacted, to recover from the Fund injured persons were required to comply with a single time period. Within thirty days of the accident they had to notify the Board of their intention to make a claim on the Fund. *N.J.S.A.* 39:6–65 (since amended); *L.* 1952, *c.* 174, § 5.

Since the enactment of the UCJF statute in 1952, the Legislature, recognizing the potentially harsh results of the filing deadline notice requirement, has amended it several times. It increased the time period from thirty days to ninety days. *L.* 1956, *c.* 200, § 1; *N.J.S.A.* 39:6–65. It later added three exceptions to that basic time period. The first two exceptions were made in 1958. *N.J.S.A.* 39:6–65(a) and (b); *L.* 1958, *c.* 99, § 2. Under subsection (a) of *N.J.S.A.* 39:6–65, a person who was physically incapable of giving notice may do so within ninety days of becoming capable; or if such person has never become capable, another person may file on his or her behalf within a reasonable time. *See Giacobbe, supra,* 29 *N.J.* at 425, 149 *A.*2d 214 (interpreting that provision to encompass mental or emotional incapacity as well as physical incapacity). Under subsec-

tion (b), a person may give notice within fifteen days of receiving notification "that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages." The Legislature added the third exception in 1963, *N.J.S.A.* 39:6–65; *L.* 1963, *c.* 81, § 10, after this Court announced in *Corrigan, supra,* 27 *N.J.* 227, 142 *A.*2d 209, that the ninety-day rule is relaxed when a person is injured by an unidentified hit-and-run driver and brings a claim under *N.J.S.A.* 39:6–78, pursuant to *N.J.S.A.* 39:6–79.

Thus, in its current form the statute specifies that the time within which a notice of claim must be filed with the Fund is ninety days from the date of the accident. That requirement may be relaxed if the claimant is not physically capable of giving such notice, if the person causing the accident is unknown, or if insurance coverage is disclaimed.

### III

Plaintiffs failed to file their notices of claim within ninety days of the accident or within the fifteen days of the date that the insurance carrier informed them that the driver of the car was not insured. Plaintiffs contend that they should not be bound to the time periods in the UCJF statute. They assert that the statutory time provisions should be interpreted as including a discovery rule that would apply when an injured party has reasonably relied on a representation of insurance coverage by the party causing the accident, and that the victim should be allowed to file a notice of claim within ninety days of the discovery that no such coverage existed. Plaintiffs stress that in this case their belief that Murray had been insured at the time of the accident was reasonable in light of their reliance on the police report's reference to an insurance carrier and an insurance policy identified by a policy number. Further, because the police did not issue Murray a summons for violating *N.J.S.A.* 39:3–29, which requires that "an insurance identifica-

tion card shall be in the possession of the driver or operator at all times," they reasonably assumed that Murray was carrying a valid insurance-identification card. Under the circumstances of this case, plaintiffs urge, the ninety-day period would start running on the day that they received notice that Murray was no longer covered under her Allstate policy.

Tied to their argument that the basic ninety-day time limit should be relaxed is plaintiffs' contention that Allstate's advice to them that Murray was not insured did not constitute a "disclaimer" of insurance that would require the notice of intention to file a claim to be given within fifteen days thereafter. However, even if the advice of non-insurance constitutes a "disclaimer," plaintiffs argue that the discovery rule should apply to allow a reasonable time or, alternatively, ninety days after such a disclaimer, within which to file a notice of intention to file a claim.

Defendants correctly point out that the courts have eschewed a liberal construction of the UCJF statute when its plain language allows for only a single interpretation. In *Schlenger v. Conti*, 47 *N.J.Super.* 566, 570, 136 *A.*2d 440 (App.Div.1957), in which the plaintiff did not file a notice with the Fund until six months after his accident, the court recognized that liberal construction of the UCJF Law to advance its remedial purpose was a sound principle, but could not be applied to the notice provision because "[t]here is not even the faintest trace of ambiguity present in this statutory mandate which would allow of judicial construction.... We will not judicially legislate in the face of so plainly stated a condition precedent as the notice provision of *N.J.S.A.* 39:6–65." In *Danisi v. Thuemling*, 72 *N.J.Super.* 118, 124, 178 *A.*2d 26 (App.Div.1962), the court refused to commence the ninety-day period on the date when plaintiff learned that the driver who struck him had misrepresented that his "boss got insurance" because "[t]o adopt the statutory interpretation that plaintiff urges would render the 90–day provision meaningless." In *Szczesny v. Vasquez*, 71 *N.J.Super.* 347, 358, 177 *A.*2d 47 (App.Div.1962), the court

refused to accept plaintiff's claim that he had filed notice within the statutory period but that it had been lost in the mail. The Appellate Division stated that courts, as the "guardian of the trust monies represented by our statutory Fund," must give full effect to those provisions designed to protect the Fund.

> [T]his court is not at liberty to modify or re-legislate these protective restrictions, which are stated in plain, understandable and unambiguous language. The doctrine of liberal construction relates to the scope of the legislation and not to the proof of the evidence necessary to establish compliance with its terms and conditions.

> [*Id.* at 358–59, 177 *A.*2d 47.]

In *Downing v. Stewart*, 85 *N.J.Super.* 62, 203 *A.*2d 724 (App. Div.1964), the court approved of the UCJF Board's rejection of a claim when plaintiffs filed twenty-five days rather than fifteen days after receiving notification of an insurer's disclaimer. The court stated that "the language of the statute is clear. It does not provide for notice to the Fund within a reasonable time; it specifies the period of time allowed to a claimant to file a notice of intention after he has received notice of disclaimer." *Id.* at 67, 203 *A.*2d 724. Finally, in *Cano v. Malone*, 237 *N.J.Super.* 272, 567 *A.*2d 298 (Law Div.1989), the court refused to create a fourth exception to the notice provision by adopting a discovery rule because "[t]he Legislature has set forth three distinct situations in which a notice of intention may be filed out of time. It is, therefore, obvious that the legislative intent was to restrict the relaxation of the ninety-day provision to the specific exceptions stated in the statute." *Id.* at 278, 567 *A.*2d 298.

Our courts, while acknowledging the principle of liberal construction of the UCJF statute to advance the statute's remedial purpose, have extended the doctrine to the scope of the legislation but not to compliance with its mandatory terms and conditions. For example, in *Giacobbe, supra,* 29 *N.J.* 421, 149 *A.*2d 214, we construed the physical-incapacity exception to include mental or emotional incapacity because "the claim [was] concededly within the principle of the act; and the delay in giving

notice is reasonably attributable to mitigating conditions within the reason and spirit of the rule itself." *Id.* at 426, 149 *A.*2d 214. Although we noted that the plaintiff in *Giacobbe* had acted in good faith and had not prejudiced the Fund, prejudice was not the determining consideration. "Delay in the giving of notice must reasonably come within the statutory rule." *Ibid.*

Similarly, in *Giles v. Gassert,* 23 *N.J.* 22, 127 *A.*2d 161 (1956), in which the claimant did not file notice until his discharge from the hospital fifty-one days after the accident—well beyond the then-prescribed notice period of thirty days—we held that the claimant came within the purview of the physical-incapacity exception. In two cases, the Appellate Division held that the ninety-day provision did not apply to minors: *Moore v. Truesdale,* 48 *N.J.Super.* 257, 137 *A.*2d 433 (1958), and *Wilkins v. Smith,* 181 *N.J.Super.* 121, 436 *A.*2d 951 (1981).

Plaintiffs rely heavily on our relaxation of the notice requirement in *Corrigan, supra,* 27 *N.J.* 227, 142 *A.*2d 209. There, however, this Court was dealing with an entirely different provision of the statute. The Court read the statute to allow more than ninety days for plaintiffs filing under *N.J.S.A.* 39:6–79, which permits resort to the Fund when the plaintiff's suit against a defendant in a hit-and-run accident has been dismissed because the driver could not be identified. We recognized that a literal reading of section 65 would render section 79 superfluous. "If the Legislature intended that a claimant who seeks to proceed under [section 79] must first file a notice of intention within 30 [now 90] days after the accident, it is indeed difficult to perceive what purpose, if any, that section could possibly serve." *Id.* at 235, 142 *A.*2d 209.

Plaintiffs urge that the circumstances of this case call for a relaxation of the statutory time periods, notwithstanding the long and settled history of a strict application of those provisions. They argue that this Court should import into the UCJF law the equitable doctrine reflected in the discovery rule, which allows plaintiffs to pursue a cause of action despite failure to

press their claim within the period of the statute of limitations when they were unaware either that they had suffered an injury or that the injury was the fault of another. *See Lopez v. Swyer,* 62 *N.J.* 267, 274, 300 *A.*2d 563 (1973). In the context provided by this case plaintiffs stress that when automobile-accident victims have reasonably relied on police-report representations of drivers' insurance coverage, the disclaimer period as well as the general ninety-day period within which to make a claim should be extended.

The discovery rule as an equitable doctrine has not been applied to all so-called "statutes of limitations." The tendency in New Jersey has been to reject the discovery rule for statutes of limitations that run from a fixed, specified event. In *Evernham v. Selected Risks Insurance Co.,* 163 *N.J.Super.* 132, 394 *A.*2d 373 (App.Div.1978), *certif. denied,* 79 *N.J.* 479, 401 *A.*2d 235 (1979), the court held that *N.J.S.A.* 39:6A–13.1(b) requires a decedent's estate to commence an action for benefits payable under the No–Fault act within two years from death or four years after the accident from which death had resulted, whichever is earlier. The Appellate Division stated: "The discovery principle developed in our tort law ... is peculiar to statutes of limitation based upon accrual of the cause of action...." *Id.* 163 *N.J.Super.* at 136, 394 *A.*2d 373. In *Presslaff v. Robins,* 168 *N.J.Super.* 543, 403 *A.*2d 939 (App.Div.1979), the court refused to apply the discovery rule to the Wrongful Death Act, which requires plaintiffs to commence actions within two years of the death of a decedent: "It is settled law in this State that the discovery principle is not applicable except in relation to an accrual period of limitations." *Id.* at 546, 403 *A.*2d 939. And in *Schwarz v. Federal Shipbuilding and Dry Dock Co.,* 16 *N.J.* 243, 108 *A.*2d 417 (1954), which involved the New Jersey Workers' Compensation Law, under which claimants must bring a cause of action within two years of the date of an accident, we rejected the petitioner's contention that the period should begin to run when manifestations of a progressive and latent injury begin to appear, regardless of the time of the accident. "Such

a change in the statute is a problem for the Legislature and this court cannot read something into the statute that is not there." *Id.* at 251, 108 *A.*2d 417.

Plaintiffs' argument that would analogize a general statute of limitations to the notice requirements of the UCJF statute misperceives the function of those requirements. The notice requirement that is a condition precedent affects the right of a party to obtain administrative relief. It differs from a general statute of limitations, which is a restriction on the time within which a party must institute judicial proceedings after the accrual of a cause of action. The statutory notice requirement, however, "goes to the validity of the claim itself: absent the required notice, the injured party has no right under the statute to receive compensation." *United States v. Studivant,* 529 *F.*2d 673, 675 (3d Cir.1976) (construing UCJF statute and holding that United States was precluded from recovering against Fund because statutory notice requirement was condition precedent rather than state statute of limitations and was binding on United States).

Our courts have consistently recognized the distinctive character of the UCJF notice requirements and have applied principles of strict construction in UCJF cases in which claimants requested application of the discovery rule to the notice provision of the statute. In *Danisi,* the court explicitly rejected the application of a discovery rule because it "would render the 90–day provision meaningless." 72 *N.J.Super.* at 124, 178 *A.*2d 26. Twenty-seven years later, another Appellate Division panel articulated in greater depth its reasons for rejecting the discovery rule. In *Cano, supra,* 237 *N.J.Super.* 272, 567 *A.*2d 298, the plaintiff did not file notice with the UCJF Board until he had become aware that an unidentified "phantom car" had been involved in the accident in which he had been injured, well beyond the ninety-day period. The court cited *Evernham* and *Presslaff* on the discovery rule's application to the accrual of a cause of action rather than to periods tied to fixed, specified events, and stated that "[i]t is not usually applied to statutory

limitations of actions." *Id.* at 276–77, 567 *A.*2d 298. The court found itself without the power to alter a statutory mandate so clear and unambiguous as the notice provision in section 65. Concluding that the statutory mandate was unambiguous, the court stated: " 'We will not judicially legislate in the face of so plainly stated a condition precedent as the notice provision. . . .' " *Id.* at 278, 567 *A.*2d 298 (quoting *Schlenger, supra,* 47 *N.J.Super.* at 570, 136 *A.*2d 440).

Plaintiffs claim, however, that their reliance on a motorist's insurance card is a distinctive circumstance that should affect the analysis endorsed by those cases. They seek indirect legislative support from the Compulsory Motor Vehicle Insurance law that was enacted in 1972. *L.* 1972, *c.* 197; *N.J.S.A.* 39:6B–1 to –3. That law requires all New Jersey motorists to carry insurance coverage and to keep an insurance identification card with them while driving. *See N.J.S.A.* 39:6B–1. Plaintiffs exaggerate the importance of the mere existence or presence of such a card. The card can be obtained when the car owner obtains insurance. However, if the insurance is cancelled, the owner is not required to return or destroy the insurance identification card. Thus, a driver who is involved in an accident may give the investigating police officer an insurance card and, unless the expiration date has passed, the officer will have no reason to question it. The other parties involved in the accident, relying on such a card or on the police report referring to it, may mistakenly assume that the motorist was insured, but the card is not reliable proof of valid insurance.

*Danisi,* which was decided before passage of the Compulsory Motor vehicle Insurance law, rejected a reliance argument that was predicated on a driver's comment that his "boss got insurance." 72 *N.J.Super.* 118, 178 *A.*2d 26. But *Matthews v. Ready,* 255 *N.J.Super.* 325, 605 *A.*2d 261 (App.Div.1992), which involved substantially the same set of facts as the present case, was decided after *N.J.S.A.* 39:6B–1 went into effect. Plaintiff relied on a police report incorporating the name of an insurance carrier and indicating insurance coverage. The Appellate Divi-

sion seemed moved by plaintiff's good-faith reliance on the police report, but only so far as to justify a determination that the insurer's pre-accident cancellation of its policy constituted a "disclaimer."

We conclude that reliance on a driver's insurance card is not a compelling reason to depart from the rule of strict construction that we have applied to unambiguous, mandatory terms and conditions of the UCJF statute. Further, to import a discovery rule into a statute such as this, which provides for a period that runs from a fixed, specified event, would be inconsistent with our previous rulings on statutes of limitations. We therefore decline to apply a discovery rule in order to relax or extend the time provisions for filing a notice of intention to make a claim on the Fund.

## IV

█ As mentioned earlier, plaintiffs assert on this appeal, although not raised below, that they are not bound by the fifteen-day limitation that applies when there has been a disclaimer of insurance because no such disclaimer was made in this case. They make the argument because they filed their notices of intention more than fifteen days after the insurance carrier had informed them that Murray was not insured. Thus, plaintiffs press the issue that the disclaimer exception in section 65(b) does not apply, but if it does, the time limitation may be relaxed under the circumstances of the case.

Thirty years ago, New Jersey courts construed the term "disclaimer" narrowly. In *Parrot v. Chiselko*, 74 *N.J.Super.* 138, 180 *A.*2d 710 (1962), the Appellate Division held that notification from an insurer that its coverage had not gone into effect until two days after an accident was not a disclaimer. The court stated:

A disclaimer of liability usually arises where there is coverage, but because of some action on the part of the insured, the company refuses to respond. This refusal could be for lack of cooperation by the insured, fraud perpetrated by the insured on the company or serving late notice of the accident.

[*Id.* at 146, 180 *A.*2d 710 (citing *Uline v. Motor Vehicle Accident Indem. Corp.*, 28 *Misc.*2d 1002, 213 *N.Y.S.*2d 871, 874–75 (Sup.Ct.1961)).]

The court reasoned that "[o]ne cannot *withdraw* or *remove* a thing which never existed." *Ibid.*

Since then, however, the Appellate Division has construed the term "disclaimer" more broadly. In *Wharton v. Knox and U.C. and J.F. Board*, 98 *N.J.Super.* 61, 236 *A.*2d 151 (1967), the court held that the insolvency of a driver's insurance company was a denial of coverage and thus a disclaimer within the meaning of the UCJF statute. The court stated that a literal interpretation of the word "disclaimer" in this case would be contrary to the purposes of the UCJF Law. Similarly, in *Joseph v. Moore*, 102 *N.J.Super.* 59, 245 *A.*2d 232 (App.Div. 1968), the court held that an insurer's notification that its policy did not cover the new car that its policy holder had bought constituted a disclaimer. Although that disclaimer was due to the fault of the insured in not informing her insurance company that she had replaced her old car with a new one, the court stated that a disclaimer could also be due to actions on the part of the company, such as bankruptcy. *Id.* at 67, 245 *A.*2d 232. And in a case remarkably similar to the present one, *Matthews, supra*, 255 *N.J.Super.* 325, 605 *A.*2d 261, the court held that an insurer's notification that it had cancelled a motorist's insurance three weeks before an accident constituted a disclaimer. The *Matthews* court was influenced by the injured party's reliance on the driver's representation of insurance coverage through an insurance card.

In *Matthews*, a finding of disclaimer saved the plaintiff's cause of action because he had filed within the requisite fifteen days provided in section 65(b). In the present case, however, plaintiffs did not file a notice until twenty-seven days after receiving Allstate's no-coverage letter. They will lose their rights under the UCJF Law unless we carve out a fourth exception to the notice provision, one that will cover their particular circumstances. That we decline to do. The statutory mandate is too clear to disrupt in order to redress plaintiffs'

lapse. The Fund's resources are not inexhaustible. One way that the Legislature has chosen to husband those limited resources is by requiring timely filing of claimants' notices that they intend to recover from the Fund. Although courts are the final arbiters of flexible provisions of the statute, we cannot rewrite statutory language that is susceptible of only a single meaning.

Plaintiffs argue that the ramifications of our decision reach far beyond their own case. If injured persons can be so easily misled by insurance cards and police reports, then all such victims will be forced to file notice with the UCJF Board as a preventive measure, which would put an unreasonable administrative burden on the Fund. We are unpersuaded by that argument. Given our broad construction of the term "disclaimer," injured persons who reasonably rely on official indicia of insurance coverage such as a current insurance card that actually reflects the fact that insurance had been obtained need not file their notice until they receive notification from an insurance company that it is denying coverage of the tortfeasor. That, however, does not alter the character or effect of the fifteen-day time period as a condition precedent to the filing of a valid claim. *Downing, supra*, 85 *N.J.Super.* at 67, 203 *A.*2d 724. Such persons must, therefore, file within the fifteen-day period mandated by the statute.

## IV

We conclude that the trial court and Appellate Division correctly dismissed plaintiffs' claims against the Fund. Plaintiffs did not file their notices of intention to file a claim with the Fund within ninety days of the accident, and their reliance on defendant-driver's insurance card does not justify relaxation of the statutory time period. Although neither lower court reached the issue of whether the insurer's no-coverage letter constituted a disclaimer, we determine that it does. Notification that despite the showing of an insurance card, a car

owner's insurance policy was cancelled prior to an accident constitutes a disclaimer and triggers the fifteen-day filing period under section 65(b).

Because plaintiffs did not file within ninety days of the accident or fifteen days of the disclaimer of insurance coverage, we uphold the trial court's dismissal of their claims and affirm the judgment below.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.